FEDERAL DEPOSIT INSURANCE
CORPORATION, Plaintiff,

v.

AMERICAN CASUALTY COMPANY OF
READING, PENNSYLVANIA, a Pennsylvania corporation, Defendant.

No. 90–CV–0265–J.

United States District Court,
D. Wyoming.

July 15, 1991.

Patrick R. Day, Anne McGihon, Jack Englert, Jr., Holland & Hart, Cheyenne, WY, and Charles R. Jaeger, Holland & Hart, Denver, CO, for plaintiff.

Richard P. Boley, William McKellar, Boley and McKellar, P.C., Cheyenne, WY, Michael P. Tone, Michael J. Rosen and Anne Fiedler, Peterson & Ross, Chicago, IL, for defendant.

## ORDER ON AMERICAN CASUALTY'S MOTION FOR SUMMARY JUDGMENT ON FDIC'S THIRD CLAIM FOR RELIEF

ALAN B. JOHNSON, Chief Judge.

This matter came before the Court on the parties' briefs, and the Court finds that oral argument is not necessary to decide the issues here involved. On 11 April 1991, FDIC requested and was given leave of court to file a reply memorandum to the defendant's response to a motion for summary judgment which was pending at that time. That reply consisted of the argument which is now before the Court on this summary judgment motion. The FDIC has subsequently filed an amended complaint, adding this third claim for relief.

The Court finds the following facts, not discussed in the Court's previous order, to be significant in determining this issue.

MGIC Indemnity Corporation, predecessor-in-interest to the defendant herein, issued its first insurance policy to the Saratoga State Bank in 1974. In 1980, MGIC issued a Directors and Officers liability policy to the Platte Valley Bancorporation, Inc., the newly created holding company for the bank. The policy's term was for three years, and with the exception of providing that the holding company was the new holder of the policy, provided substantially the same coverage as its predecessor policy.

In September 1983, MGIC asked the Allen–Cornwell Agency, the bank's insurance broker, to have the bank submit a renewal application to continue coverage after the

December 1983 expiration of the policy then in effect. The bank submitted that application in November 1983. On 30 November 1983, MGIC issued a "Commitment of Insurance" to the bank, which included a list of each of the endorsements which would attach to the renewal policy. The insurance agency also provided the bank with an insurance Binder discussing the coverage under the renewal policy. The Commitment, attached to both parties briefs, describes each endorsement by title and number only. The two endorsements which were the subject of the Court's 3 July 1991 Order on summary judgment, the regulatory and insured v. insured endorsements, were not in the 1980 policy, but were added to the 1983 renewal. When actual copies of the endorsements were provided to the bank is a point of contention.

On 9 December 1983, MGIC issued the Directors and Officers Liability Insurance Policy to the bank. .

FDIC's third claim for relief posits two alternative theories of recovery. Initially, FDIC contends that the law requires an insurance company to make an insured aware of any reduction in coverage when a policy is renewed. The insured's remedy when there is a failure to do so is to have the earlier broader policy limits enforced. FDIC alleges that ACCO failed to adequately inform McIlvaine or other representatives of the bank that the renewal policy was substantially more limited than the previous policy and the Court should, therefore, enforce the provisions of the 1980 D & O policy.

Alternatively, FDIC asks that the Court find that the significant reduction in coverage amounted to a "nonrenewal" of the 1980 policy. If the Court were to find such, FDIC contends, the proper remedy under the insurance contract is to require that American Casualty give the insured notice of nonrenewal and the opportunity for an "extended discovery" period. The result would also be enforcement of the 1980 policy.

American Casualty has moved for summary judgment, alleging that there is no issue of material fact as to the knowledge of the bank of the specific endorsements which were attached to the 1983 renewal policy.

ACCO contends that Mr. George Allen, of Allen–Cornwell, specifically discussed both the regulatory and insured v. insured endorsements with McIlvaine prior to him signing the Commitment of insurance, and that McIlvaine did then sign that Commitment. The commitment, ACCO argues, contained language stating that the terms and conditions of the renewal policy differed from the expiring policy's terms, and that the signature of McIlvaine demonstrated that he understood those differences.

American Casualty also argues that no claim was made against any officer or director until the action against McIlvaine on 11 October 1988, and are thus not covered by either of the two policies in question.

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits on file, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party's burden may be met by identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether these burdens have been met, the court is required to examine all evidence in the light most favorable to the non-moving party. *Barber v. General Electric Co.*, 648 F.2d 1272 (10th Cir.1981).

Once the moving party has met its initial burden, the burden shifts to the party resisting the motion. That party must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Manders v. Oklahoma ex rel. Dept. of Mental Health*, 875 F.2d 263, 265 (10th Cir.1989) citing *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553.

▇ Wyoming has adopted the rule of law from *Government Employees Insurance Co. v. United States,* 400 F.2d 172 (10th Cir. 1968). In that case, the Tenth Circuit stated the general rule that, when a renewal policy provides less coverage than the expiring policy, an insurer may be bound by broader policy limits of the earlier policy if the insured is not made aware of the reduction in coverage.

> When a renewal policy is issued, it is presumed, unless a contrary intention appears, that the parties intended to adopt in the renewal policy, the terms, conditions and coverage of the expiring policies.

*Id.* at 175, quoting *Pearl Assur. Co. v. School Dist. No. 1,* 212 F.2d 778, 782 (10th Cir.1954). The court found that sending an insured the different policy and telling them to "read carefully" is not sufficient to inform of a reduction in coverage. In fact, "[t]he obligation is with the insurer to *specifically inform* the insured of the changes in the terms of the policy which is a renewal policy." *Aetna Ins. Co. v. Lythgoe,* 618 P.2d 1057, 1060 (Wyo.1980) (emphasis added). This is so even if the insured has failed to examine the policy.

▇ To be successful on summary judgment American Casualty must demonstrate that, as a matter of law and based upon the facts in the record, the Court must find that the bank was sufficiently informed of the extent and nature of the changes in coverage. ACCO must show that it specifically informed the bank of the reduction in coverage in the 1983 policy. Viewing the facts in the light most favorable to the plaintiff, the Court cannot so find.

There remains a question of fact as to whether McIlvaine was fully informed that the terms and conditions of the renewal policy were substantially changed. The state of an individual's knowledge, based upon what and when he was told certain information, is intrinsically a question of fact. He does not remember having any conversations with Mr. Allen regarding the inclusion of the endorsements, and Allen only states that the standard policy of the agency was to discuss these types of changes. That statement is far from adequate to justify summarily dismissing the claim.

There also remain issues of fact regarding the time when the bank received the complete endorsements which were to be attached to the renewal policy. FDIC contends that those were not given to the bank until after the policy's inception, some time in or after January 1984. In *Government Employees,* the Tenth Circuit stated that even providing an insured copies of the entire policy does not serve notice on the insured that there has been a reduction in coverage. However, if the policy is accompanied by a concise separately attached and boldly worded modification, it would suffice to put an insured on notice. *Government Employees Ins. Co.,* 400 F.2d at 175. In the present case, it is disputed whether the bank received *any* of this information prior to issuance of the policy. That question of fact remaining, the Court cannot grant summary judgment.

▇ There are significant questions of fact regarding whether the policy was "renewed." The court in *Continental Cas. Co. v. Allen,* 710 F.Supp. 1088 (N.D.Tex.1989) found that the extended discovery clause of an earlier policy would be enforced if an insurer had not renewed the expiring policy by substantially reduced coverage in issuing a new policy, yet had not informed the insured of the nonrenewal. Paragraph 7(b) of the 1980 policy here at issue provided in pertinent part:

> If the Insurer elects not to renew this policy, the Insurer shall provide the Bank for itself and as agent for the Directors and Officers with no less than thirty (30) days advance notice thereof.

There is no contention that the 1983 policy was not a substantial reduction in coverage. No evidence has been presented indicating that any representative of American Casualty ever suggested that the 1983 policy was not a renewal of the expiring policy. At a minimum, questions of fact exist as to whether the issuance of the 1983 policy was a nonrenewal of the 1980 policy and when and if notice of such was given to the bank. Finding such, the Court cannot grant summary judgment on this claim.

Finally, the Court notes American Casualty's argument concerning the requirement of a finding of mutual mistake or fraud before a court may reform a contract. *See*, Memorandum of Defendant American Casualty, at 21–3. These arguments are misplaced in a case where, as here, the issue concerns the actions of the insurer in informing an insured of reduced policy coverage. None of the courts discussing the enforcement of prior, more broad, policy provisions, have required that the insured demonstrate either mutual mistake or fraud.

ACCORDINGLY IT IS ORDERED that the defendant's Motion for Summary Judgment on the FDIC's third claim for relief should be, and is, DENIED.